UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO: 2:07 CR 132 |
| | ) | |
| DOZIER T. ALLEN, JR., WANDA | ) | |
| JOSHUA, and ANN MARIE KARRAS. | ) | |

**OPINION AND ORDER**

Defendants Dozier Allen, Wanda Joshua and Ann Marie Karras were convicted by a jury of two counts of mail fraud for defrauding Calumet Township and its citizens of over $140,000 and of the right to honest services owed by Defendants as Calumet Township officials. At trial, over Government objection, Defendants called Attorney Frederick Work to the stand to testify that he had advised Defendants that their actions were lawful, and to show that Defendants acted in good faith. Defendants were obviously under no obligation to present this testimony in their defense. But since they did, I gave the jury an instruction on how they may consider Attorney Work's testimony. Defendants contend that this "advice of counsel" instruction was improper and have therefore moved for a new trial. (DE 161.) For the following reasons, the motion is denied.

**I. BACKGROUND**

The Defendants were charged with participating in a mail fraud scheme that took place between January 2000 and December 2002. During that time, Allen served as the elected Trustee of Calumet Township; Joshua served as Chief Deputy Trustee; and Karras was the Deputy Trustee of Finance. The Trustee's Office is responsible for distributing welfare payments and other assistance to poor citizens of the Township. All three individuals were paid employees of the Township, whose salaries were reviewed and approved by the Township's three-member Board.

In February 2000, the Calumet Township Trustee's Office, with Allen at the helm, entered

into a contract with Workforce Development Services (WDS). WDS is a nonprofit agency that provides employment and training services for residents of Northwest Indiana. The WDS contract required the Trustee's Office to submit monthly reports to WDS specifying the amount of non-federal dollars that the Trustee's Office had expended on welfare-to-work services. The Trustee already had this information at his fingertips so producing it to WDS didn't take a great deal of effort. WDS found this information valuable because it would help them increase their own federal funding. As a result, WDS was willing to pay the Trustee's Office a healthy sum of money for the information. And indeed they did. Over the course of the contract, the Trustee's Office received $170,000 in exchange for the information it gave to WDS.

The scheme to defraud as outlined in the indictment and as proved at trial was straight-forward. Instead of having the money from WDS go the Trustee's Office where it rightfully belonged, the three Defendants paid it to themselves. (A fourth defendant whose case was severed and who later pled guilty also received some of the money.) In all, $145,000 was siphoned off and pocketed by the Defendants even though none of them did any additional work beyond their normal Township duties to perform under the WDS contract. The Trustee's Office disclosed in its annual report that grant funds were disbursed, but only after the WDS contract proceeds had been paid out. Defendants did not disclose that the payments were made to them, nor did they obtain preapproval for these payments from the Township Board, as they were required to under the Indiana conflicts of interest law. Ind. Code § 35-44-1-3. According to the Government's theory – which the jury accepted – this was both a scheme to defraud the Trustee's Office of money and of the intangible right to honest services of these public officials.

At trial, Defendants chose to present evidence in their defense. Among the witnesses they called was Attorney Frederick Work. Mr. Work is a distinguished attorney with over fifty years of

legal experience including a tenure as a city judge and admissions in this Court, the Seventh Circuit Court of Appeals and the United States Supreme Court. Work and Allen have been close personal friends for decades. Once Allen was elected Trustee in 1970, Work became his attorney. Work continued to serve as attorney for the Trustee's Office for the duration of Allen's 32-year tenure.

Defendants contended at trial – as they do now – that the purpose of Work's testimony was to demonstrate Defendants' good faith belief that their actions with respect to the WDS contract were lawful. They hoped to accomplish this by showing that Work's advice to Defendants on the propriety of their conduct had an effect on their *mens rea*. The Government objected to Work's testimony. But because I found Work's testimony relevant to the issue of intent, I allowed Defendants to examine Work on the limited issue of what advice he gave to Defendants. In other words, if the jury believed that Work advised the Defendants that it was lawful for them to accept these administrative fees, then the jury might conclude that this negated the intent to defraud.

Work testified that he gave the following advice to Defendants prior to their acceptance of the funds: First, he advised the Defendants that it was lawful for them to pay themselves "administrative fees" from the proceeds of the WDS contract. Here's precisely what he said:

> Q: Do you recall any occasion of advising Mr. Allen regarding the legality of either of the grants I – contracts I just made mention of, where either he or other individuals employed by the trustee's office could receive compensation from the monies received under those contracts in addition to their salaries?
>
> \* \* \*
>
> A: I can't give you a date or a time, but I am certain that it was discussed, and I'm certain that it was my opinion that if the contract provided for administrative costs, that that authorized the Trustee to pay administrative fees, which includes salaries or stipends for additional work.

(Trial Tr. at 22 (DE 170).)

3

> Q: Now, you said that you advised the Defendants that they could – or actually Mr. Allen, that they could take these administrative fees, correct?
>
> A: Yes.

(*Id.*, Tr. at 104.)

Second, Work told Allen that it was permissible for them to receive money from the Township in addition to their salaries. In particular, according to Work, he told Mr. Allen that an Indiana statute that limited compensation for the Township trustee only applied to his budgeted salary and since the grant money at issue here was "outside the budget," then Allen could receive the administrative fees.

> Q: Now during the period of '98 to 2002, were you aware of the existence of a statute enacted by the Indiana legislature that specifically addressed the issue of limitations on compensation to an elected Township Trustee?
>
> A: In a general sense, yes.
>
> Q: Do you recall whether or not you had any conversations with Mr. Allen regarding the applicability of that statute to his circumstance vis-a-vis these contracts?
>
> A: I had conversations with him, but I didn't think that the statute was applicable to the situation as it relates to the grants. The state statute is referencing –
>
> \* \* \*
>
> Q: As best you can recall, what did you relate to Mr. Allen on that topic?
>
> A: I related to him that that statute applies to his budgeted salary, the grants are outside the budget, and that that has no impact if there was additional work to be done.

(*Id.*, Tr. at 26-27.)

Third, Work advised Allen that he didn't need to get approval each year from the Township Board to appropriate the WDS grant proceeds.

> Q: Was it not your advice to Mr. Allen that as a result of [Resolution] 98-5A being approved by the Board, that he did not have to go back to the Board every year to

get reappropriation or new appropriation of those funds?

A: Absolutely. Yes. That was the purpose of the resolution.

(*Id.*, Tr. at 41.)

Fourth, Work told Defendants that they didn't need to make any disclosures under the Indiana conflicts of interest statute outside of the annual reports.

Q: You testified earlier that you advised the – at least Defendant Allen that the conflict of interest statute did not apply in this case, is that correct?

A: Yes.

(*Id.*, Tr. at 75-76.)

Q: Was the fact that the form of reporting being State Board of Account – State of Indiana, State Board of Accounts forms, and process and protocol contribute to your advice expressed to Mr. Allen that disclosure in annual reports constituted compliance with any concerns regarding conflict of interest disclosure?

A: That was my opinion, yes.

(*Id.*, Tr. at 97.)

After the close of evidence, I provided the parties with the Court's Proposed Jury Instructions, which included Defendants' proposed "good faith" instruction as Instruction No. 22. (DE 115.) That instruction stated that: "Good faith on the part of a defendant is inconsistent with intent to defraud, an element of both of the charges in this case. The burden is not on any of the Defendants to prove his or her good faith; rather, the Government must prove beyond a reasonable doubt that the Defendants acted with intent to defraud." (DE 87.)

At the jury instruction conference, the Government tendered an additional "advice of counsel" jury instruction. After considering the proposed instruction in chambers, as well as Defendants' objections to it, I gave the following instruction as Instruction No. 22A:

You may consider the advice given by counsel to a defendant in deciding whether the defendant possessed the requisite intent to defraud if you find that before taking

action, the defendant in good faith sought the advice of an attorney whom the
defendant considered competent for the purpose of securing advice on the
lawfulness of the defendant's possible future conduct, and made a full and accurate
report to the attorney of all material facts which the defendant knew, and acted
strictly in accordance with the advice of the attorney who had been given a full
report.

(DE 117.)

The jury found all three Defendants guilty on both counts of mail fraud, and this motion for a new trial followed.

## II. DISCUSSION

Defendants seek a new trial on the grounds that Instruction 22A placed an improper burden of persuasion on them by requiring them to prove certain elements in order to advance their theory of the case. The Fourteenth Amendment's Due Process Clause prevents the government from placing the burden of proof on the defense for any element or fact necessary for conviction. *Williford v. Young*, 779 F.2d 405, 408 (7th Cir. 1985). "If a reasonable juror could have understood a particular jury instruction as shifting the burden of persuasion on an element of a crime to the defense, the accused has been denied due process of law." *Id.*

The Defendants were charged with mail fraud, the elements of which are: (1) participation in a scheme to defraud; (2) intent to defraud; and (3) use of the mails to further the fraudulent scheme. *United States v. Boisture*, 563 F.3d 295, 298 (7th Cir. 2009). I instructed the jury twice that the Government bore the burden of proof on these elements beyond a reasonable doubt. Instruction 10 reads:

> The defendants are presumed to be innocent of each of the charges. This
> presumption continues during every stage of the trial and your deliberations on the
> verdict. It is not overcome unless from all the evidence in the case you are
> convinced beyond a reasonable doubt that the defendants are guilty as charged. The
> government has the burden of proving the guilt of the defendants beyond a
> reasonable doubt. This burden of proof stays with the government throughout the

case. The defendants are never required to prove their innocence or to produce any evidence at all.

(DE 117.) And Instruction 22 (tendered by Defendants) stresses:

Good faith on the part of a defendant is inconsistent with intent to defraud, an element of both of the charges in this case. The burden is not on any of the defendants to prove his or her good faith; rather, the government must prove beyond a reasonable doubt that the defendants acted with intent to defraud.

(*Id.*) Both of these instructions make clear that the Government must prove intent.

Instruction 22A, on the other hand, informs the jury that it "*may* consider the advice given by counsel" on the issue of intent if certain conditions are met. (*Id.*) (emphasis added). The instruction did not require the jury to find that the conditions were satisfied in order to conclude that Defendants acted in good faith, nor were these conditions necessary for the jury to find that Defendants lacked the requisite intent to defraud. As the instruction makes clear, the jury wasn't required to consider Work's legal advice to Defendants at all. So it can't be said that the instructions placed a burden on Defendants to prove certain facts in order to avoid a conviction on mail fraud.

Defendants insist that the instruction effectively required them to establish an advice of counsel "defense" when they had no intention of asserting such a defense. This argument mischaracterizes the issue. "There is no such thing as an 'advice of counsel' defense." *United States v. Urfer*, 287 F.3d 663, 665 (7th Cir. 2002). But "a lawyer's fully informed opinion that certain conduct is lawful (followed by conduct strictly in compliance with that opinion) can negate the mental state required for some crimes, including fraud." *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008). And that is precisely the reason Work was called to testify – to show that the Defendants did not act with an intent to defraud. But in order for that theory to have any basis in evidence, a defendant must establish the five conditions listed in Instruction 22A, that (1)

7

before taking action, (2) the defendant in good faith sought the advice of an attorney whom he considered competent, (3) for the purpose of securing advice on the lawfulness of his future conduct, (4) made a full and accurate report to the attorney of all material facts he knew and (5) acted in strict accordance with the advice. *Id.*

The Seventh Circuit has addressed this legal theory on several occasions where the *defendant* sought an advice of counsel instruction, but the district court denied the instruction because of lack of evidence. *See, e.g., id.* at 823; *United States v. Al-Shahin*, 474 F.3d 941, 947-48 (7th Cir. 2007); *United States v. Cheek*, 3 F.3d 1057, 1061 (7th Cir. 1993). This case presents an unusual situation because the *Government* – not Defendants – sought the instruction. To be sure, the Defendants do not argue that Instruction 22A is a misstatement of the law. *See United States v. Matthews*, 505 F.3d 698, 704 (7th Cir. 2007) ("[S]o long as the instructions represented a complete and correct statement of law . . . we will reverse the jury's verdict only if the instructions, viewed as a whole, misguided the jury to the litigant's prejudice.") (internal citations and quotations omitted). Therefore, the question is not whether the instruction is a correct statement of the law but whether it should have been given at all.

The problem here is that the Defendants wanted to have their cake and eat it too. The position is a pretty bold one. Defendants sought the benefit of Work's testimony – and damaging testimony it was, if believed by the jury – without the jury being fully informed on how it could use that evidence. Defendants were under no obligation to offer Work's testimony. Indeed, the Government argued strenuously that Work's testimony was irrelevant. I disagreed and found that it was probative on the issue of the Defendants' intent to defraud. Yet after prevailing on the issue and getting the benefit of Work's testimony, the Defendants then wanted to preclude the jury from hearing *how* they could evaluate the testimony. The legal advice of an accomplished attorney

8

such as Work had the potential to mislead the jury without an instruction indicating how that testimony may be used.

Defendants also claim that the manner in which Instruction 22A was entered "ambushed" them at trial. From their perspective, the Government prejudiced Defendants by tendering the advice of counsel instruction after the close of evidence, when it was too late for them to tailor their case-in-chief to that instruction. Claiming "ambush" strikes me as hyperbole. I overlooked the advice of counsel instruction in the Court's jury instructions that I provided to the parties at the end of the trial. The Government caught the oversight and tendered an instruction that correctly stated the law. How this could have been a surprise to the Defendants is unclear since the issue was plainly raised by the evidence in light of Work's testimony. How else could Work's testimony have been relevant other than on the issue of the Defendants' intent? And if this is so, then the jury needed to be instructed on how it could use the evidence.

To the extent Defendants claim they were blind-sighted by the instruction, that argument is unpersuasive. It was Defendants' responsibility to ascertain what factual conditions were necessary for the jury to properly consider Work's testimony. Defendants' attempt to have the benefit of Work's testimony without a limiting instruction on how that testimony could be considered is an unsuccessful litigation strategy, not unfair surprise. And the timing of the instruction doesn't present any procedural concerns because the Federal Rules of Criminal Procedure only require notice of the instruction to the parties before closing arguments. Fed. R. Crim. P. 30(b). "The purpose of the notice requirement is to allow counsel to conform their arguments to the law as it will thereafter be presented by the judge to the jury." *United States v. Prawl*, 168 F.3d 622, 629 (2d Cir. 1999) (internal citations omitted).

Finally, Defendants argue that Instruction 22A deprived them of their Sixth Amendment

9

rights. "The Sixth Amendment to the Constitution accords criminal defendants the right to effective assistance of counsel." *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *see also* U.S. Const. amend. VI. Defendants' attorneys do not contend that *they* rendered ineffective assistance of counsel; instead they argue that the Court's entry of Instruction 22A impeded the effectiveness of their counsel. This argument simply attempts to rehash Defendants' due process argument under a different name. For reasons explained above, Defendants were not unfairly prejudiced by the instruction. Moreover, the argument is misplaced. An ineffective assistance of counsel claim is a collateral attack on the proceedings directed at the performance of defense counsel at trial. *See United States v. Morgan*, 384 F.3d 439, 444 (7th Cir. 2004). Since the competence of Defendants' attorneys is not at issue, neither is the Sixth Amendment.

### III. CONCLUSION

For these reasons, Defendants' Joint Motion for a New Trial [DE 161] is **DENIED**.

**SO ORDERED.**

Dated: October 13, 2009.

                                             s/ Philip P. Simon
                                            PHILIP P. SIMON, JUDGE
                                            UNITED STATES DISTRICT COURT