# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:07 CR 132 PPS |
| | ) | |
| DOZIER T. ALLEN, | ) | |
| WANDA JOSHUA, | ) | |
| ANN MARIE KARRAS, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are Defendant Dozier Allen's [DE 262], Defendant Wanda Joshua's [DE 281], and Defendant Ann Marie Karras' [DE 282] separate Motions for Release from Custody Pending Appeal. These Defendants are former Calumet Township employees charged with two counts of mail fraud for using the mails in a scheme to defraud Calumet Township of money and honest services in violation of 18 U.S.C. § 1341 and § 1346. The jury returned a special verdict finding the Defendants guilty on both counts, and also specifically finding that each Defendant defrauded Calumet Township of both money and honest services. I sentenced Allen to 18 months, Joshua to 15 months, and Karras to 12 months and one day in prison. Each filed a timely notice of appeal. The Defendants then filed separate motions for release from custody pending resolution of their appeals.

18 U.S.C. § 3143(b) governs when an individual may be released from detention pending appeal. Section 3143(b) states that a person found guilty of an offense and sentenced, may be released pending appeal by showing: (1) the defendant is not likely to flee or pose a

danger to community if released; (2) the appeal is not for the purpose of delay; and (3) the appeal "raises a substantial question of law or fact" likely to result in reversal, a new trial, a sentence with no prison time, or a reduced sentence for less prison time than the expected duration of an appeal. 18 U.S.C. § 3143(b).

The Government does not claim that these Defendants are a flight risk, dangerous to the community, or that the appeals were made for the purpose of delay. So the issue is whether the Defendants' appeals raise a "substantial question of law or fact" likely to result in reversal, a new trial, or a sentence without imprisonment. An appeal raises a "substantial question" if it presents "a 'close' question or one that very well could be decided the other way." *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986); *United States v. Greenburg*, 772 F.2d 340, 341 (7th Cir. 1985) (the question must be a "toss-up or nearly so"). If the appeal presents a substantial issue, the defendant must then demonstrate that the substantial issue will likely affect the validity of the conviction. *Shoffner*, 791 F.3d at 588.

With little explanation or analysis, the Defendants present the following issues that they believe raise substantial questions of law and/or fact likely to result in reversal, an order for a new trial, or a sentence that does not include a term of imprisonment.

First, Allen and Karras claim there was insufficient evidence to show that the mails were used in a scheme to defraud. I have already rejected this argument in an Opinion and Order denying the Defendants' Motion for Acquittal. [DE 156.] Nonetheless, the Defendants rest solely on the Seventh Circuit cases cited in the Motion for Acquittal to support their claim that this issue raises a substantial question on appeal. *See United States v. Brooks*, 748 F.2d 1199 (7th Cir. 1984); *United States v. Swinson*, 993 F.2d 1299 (7th Cir. 1993). While a substantial

question may exist where the defendant's argument finds support in Seventh Circuit precedent, *see United States v. Eaken*, 995 F.2d 740 (7th Cir. 1993), I have already analyzed *Brooks* and *Swinson* and found them "significantly different" than this case. [DE 156 at 9.] Specifically, I held that the markings on the envelopes, along with the testimony of two Government witnesses, provided "more than enough" circumstantial evidence for a reasonable juror to find that the checks at issue were mailed. [*Id*. at 13.] This was not a close call and does not raise a substantial question on appeal.

Next, Allen and Karras argue that the jury instruction defining "advice of counsel" raises a substantial question. But again, they rest solely on arguments I already rejected, this time in an Opinion and Order denying the Defendants' Motion for New Trial. [DE 196.] In that Opinion and Order, I held that the instruction at issue, which explained to the jury that it "may" consider advice given by counsel on the issue of intent if certain conditions were met, was a correct statement of the law, and it properly informed the jury how it could use evidence submitted by the Defendants. It was the Defendants who introduced evidence from Allen's lawyer, Fred Work. The whole point of the evidence was that Allen allegedly relied on Work's advice in taking the actions he took. Yet when it came time to instruct the jury on how it was supposed to evaluate that testimony, the Defendants objected. The Defendants wanted to have free reign to argue to the jury how it should use that evidence, unconstrained from what the law might require. I characterized the Defendants challenge to the jury instruction as "bold" and "unpersuasive," and I denied the Defendants attempt to "have their cake and eat it too." [*Id*. at 8-9.] That remains my view of it, and I am not convinced that this raises a substantial issue on appeal.

The Defendants also claim that application of the Supreme Court's recent decision in *United States v. Skilling*, 2010 WL 2518587 (U.S. June 24, 2010) creates a substantial issue. Recall that the Defendants in this case were found guilty of using the mails to defraud Calumet Township of both honest services *and* money. But in *Skilling*, the Supreme Court held that the honest services statute, 18 U.S.C. § 1346, only criminalizes schemes to defraud that involve bribes and kickbacks. *Id*. at *8. This case did not involve bribes or kickbacks. And the Court in *Skilling* specifically held that § 1346 did not apply to conflict of interest cases, *id*. at *28-29, which was the basis for the honest services charge here.

But, unlike *Skilling*, the jury was presented a special verdict form in this case. The special verdict form asked the jury to determine whether the Government had proven beyond a reasonable doubt that the Defendants "engaged in a scheme to obtain money from Calumet Township" or "engaged in a scheme to defraud the citizens of Calumet Township of their right to honest services." [DE 118, 127.] If the jury found the specific Defendant guilty of mail fraud, it then had to check either or both of these options. Similarly, the jury instructions clearly differentiated between the Defendants' alleged participation in a scheme to obtain money and participation in a scheme to deprive honest services, and explained that to find that a defendant committed either, the jury must unanimously agree on the specific act the defendant committed. [DE 117 at 17.] And the jury unanimously found each Defendant guilty of engaging in a scheme to defraud Calumet Township of *both* money and honest services. So even without the honest services charge, the Defendants were still guilty of defrauding Calumet Township of money. Importantly, the Defendants did not object to use of the special verdict form.

The Defendants argue, however, that the indictment and the evidence at trial "reveals that

the government so intertwined both theories of culpability that separation was (and is )

impossible." [DE 278 at 2; 281 at 2; 282 at 4.] They claim that the way the indictment was

written, along with the evidence and final instructions, led the jury to believe that deprivation of

honest services was the "gravamen of the fraud by which money was obtained." [DE 278 at 3.]

I disagree. The jury found that the Defendants used the mail to siphon over $140,000 of Calumet Township's money; the Defendants simply took money that was supposed to go to the Calumet Township Trustee's Office and paid it to themselves. The evidence included checks that were mailed to the Trustee's Office, placed in a bank account, and then paid to the Defendants. Honest services aside, there was more than enough evidence for the jury find that the Defendants engaged in a scheme to defraud Calumet Township of money – indeed, that's what this case was all about. And, as noted above, the final jury instructions clearly explained that the scheme to obtain money and the scheme to deprive the citizens of Calumet Township of honest services were specific and distinct acts, and the jury was ordered to treat them as such. [*See* DE 117 at 17.]

Also, while the Supreme Court recently explained that special verdict forms should be used with caution, *Black v. United States*, 2010 WL 2518593, at *5 (U.S. June 24, 2010), the Seventh Circuit has found that the type of special verdict form at issue here is permissible. *See United States v. Black*, 530 F.3d 596, 603 (7th Cir. 2008) *rev'd on other grounds*, *Black*, 2010 WL 2518593; *see also United States v. Eberhart*, 467 F.3d 659, 666 (7th Cir. 2006); *United States v. Macedo*, 406 F.3d 778, 786 (7th Cir. 2005). Thus, because the jury returned a special verdict form unanimously finding the Defendants guilty of mail fraud for engaging in a scheme to obtain money from Calumet Township, the Supreme Court's holding in *Skilling* does not raise

a substantial issue on appeal.

Karras also claims that whether the Indiana Conflict of Interest statute applies to her raises a substantial issue because she had no discretionary authority regarding the contract at issue. But she does not present any argument as to why this is so, and thus, fails to show how this issue presents a close call that could be decided either way. *See United States v. Bilanzich*, 771 F.2d 292, 298 (7th Cir. 1985) (the defendant bears the burden of showing that an issue is substantial).

Next, Allen asserts that I should factor in his advanced age and poor health, and Karras asks that I consider her husband's deteriorating health, in granting their motions to remain free pending appeal. But health is not an element for consideration under § 3143(b). More importantly, I considered Allen's age and health when I sentenced him to 18 months, and I considered the health of Karras' husband when I sentenced her to 12 months and one day, both of which were substantially below the recommended guideline range.[1]

Finally, Joshua argues that "the invalidity of the Mail Fraud conviction under § 1346 would warrant a new calculation under the United States Sentencing Guidelines" [DE 281 at 3], but fails to explain why this is so. She also rehashes her argument from sentencing that her guilty plea for Failure to File an Income Tax Return warrants a two point reduction for acceptance of responsibility. I rejected this argument at sentencing, and do so again here. These arguments do not raise a substantial issue on appeal.

Consequently, Defendant Dozier Allen's Motion for Release from Custody Pending

---

[1] According to the Probation Office, the U.S. Sentencing Guidelines recommended a 30-37 month sentence for Allen and 24-30 months for Karras.

Appeal [DE 262], Defendant Wanda Joshua's Motion for Release Pending Appeal [DE 281], and Defendant Ann Marie Karras' Motion for Stay of Sentence Pending Appeal [DE 282] are **DENIED.**

**SO ORDERED.**

ENTERED: July 15, 2010.

                                             s/ Philip P. Simon
                                             PHILIP P. SIMON, CHIEF JUDGE
                                             UNITED STATES DISTRICT COURT